**James M. DODSON, III, Appellant,**

**v.**

**L.C. KUNG, Westland Oil Development Corporation and Ranger Building Corporation, Appellees.**

**No. B14–85–640–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 7, 1986.

Rehearing Denied Sept. 11, 1986.

386

Newton B. Schwartz, Barry S. Berger, Houston, for appellant.

William Pannill, Anita J. Newland, Joe H. Reynolds, Rory C. Flynn, Fitzhugh H. Pannill, Jr., Houston, for appellees.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

## OPINION

PAUL PRESSLER, Justice.

A summary judgment was granted against Appellant, a former employee of Appellee Ranger Building Corporation. Appellant contended that he was induced to leave his business in Dallas for employment as president of a new construction company in reliance on oral promises made by Appellee Kung, president and owner of Westland Oil Development Corporation. After working for the company for two and one-half years, Appellant resigned, claiming the alleged promises were not fulfilled. He sued, alleging, among other theories, common law and statutory fraud, breach of contract and breach of fiduciary duty. We affirm.

Appellant met Kung in 1961 while Appellant was a skeet boy at Lakeside Country Club. The two developed a relationship described as both father/son and mentor/protégé. Kung advised Dodson, and on at least two occasions turned down requests by Dodson for financial help. After graduation from college Dodson entered a partnership with his father to build mini-warehouses. He later moved to Dallas and formed a company which installed tennis courts.

According to Dodson, the background was as follows:

In 1980 he called to express sympathy to Kung about his impending divorce, and the two men resumed their friendship. He and Kung, at the latter's instigation, had twenty or twenty-five conversations about his going to work for Kung. Over Thanksgiving 1980, while at Kung's Louisiana hunting lodge, Kung offered to associate with Dodson in the formation of a new construction company, make Dodson president with a large salary and give him ten percent of the stock. He also promised to buy the stock upon demand for not less than $100,-000 if Dodson stayed with the company for at least one year after its stock was issued. Dodson asked Kung to put the agreement in writing, but he refused. Dodson never related this agreement to any other Ranger

board member. Ranger was incorporated on December 15, 1980. Dodson began as president in January 1981. In February 1981 Westland became the majority stockholder. In November 1982 Westland loaned Ranger $1,000,000, secured by preferred stock, to enable Ranger to obtain a performance bond. Dodson became increasingly dissatisfied with certain changes and resigned on July 12, 1983, complaining of a "police-like atmosphere." When his brother (as his proxy) demanded payment for the Ranger shares, he demanded payment of the directors and not of Kung. He was told that the company was insolvent and the shares worthless.

According to Kung, the background was as follows:

After the resumption of his friendship with Dodson, Westland entered into a written contract with Dodson's Dallas company to clear the site for Westland's new office buildings in Montgomery County. Dodson then came to him and asked to be the contractor for the buildings, and, although he had misgivings about Dodson's inexperience, he hired him because he was a friend and in some financial distress. He denies any oral agreement concerning the stock. Shortly after Ranger's incorporation, Westland and three individuals, including Dodson but not Kung, bought shares in the company and became the board of directors. Twenty-one months later, Dodson voted with the other directors to borrow $1,000,000 from Westland to qualify for performance bonding, and to issue preferred stock as security. By mid–1983, Ranger had bid on ten outside jobs but had been awarded no contracts other than those from Westland. Kung became dissatisfied with the quality of construction on those projects and told Dodson not to bid on any more jobs until he completed those he had. On July 12, 1983, Dodson submitted his resignation and took with him Ranger's files and records. Subsequently, the directors declared Ranger insolvent, and it has never re-paid Westland's loan.

Dodson raises eight points of error. In his third and fourth points of error, Dodson alleges that genuine issues of material fact exist concerning the oral contract to redeem his Ranger stock *if* he remained with the company for at least one year *from the date the stock was issued*. Dodson admits that ordinarily such an agreement would be unenforceable under both Tex.Bus. & Com. Code Ann. §§ 26.01(b)(6) and 8.319 (Vernon Supp.1986). Section 26.01 of the Statute of Frauds requires that an agreement which is not to be performed within one year from the date of its making be put in writing and signed. Section 8.319 sets forth a similar requirement for a contract for the sale of securities. Dodson does not dispute that the alleged agreement was made during Thanksgiving of 1980; that shares of stock were issued on February 4, 1981; and that he had to work at least until February 5, 1982, before he could demand that Kung redeem the stock. Appellant argues, however, that Appellees are estopped from relying on these statutes because of a fiduciary relationship between Dodson and Kung.

This argument is based upon the premise that equity may enforce an otherwise unenforceable oral agreement when nonenforcement of the agreement would itself amount to a fraud. *Hooks v. Bridgewater*, 111 Tex. 122, 128, 229 S.W. 1114, 1116 (1921). "This is the basis, and the only basis, for the jurisdiction which courts of equity have assumed in their creation of exceptions to the statute." *Id.* One of the exceptions so created is when the existence of a fiduciary relationship between the parties is involved. The Court of Appeals in *Locke v. Thigpen*, 353 S.W.2d 249, 255 (Tex.Civ.App.—Houston 1961), *rev'd on other grounds*, 363 S.W.2d 247 (Tex.1962) recognized a confidential relationship as a matter of law in certain recognized fiduciary relations such as attorney and client, trustee and cestui que trust or husband and wife. In addition, such a relationship may exist as a matter of fact when one person has placed a special confidence in another to cause the parties not to deal with each other on equal terms, either because of the dominance of one or the weak-

ness, dependence or justifiable trust of the other. *Id.*

Dodson argues that in Texas the question of whether a confidential or fiduciary relationship existed is ordinarily one of fact for a jury. This is frequently true. In *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962), the Supreme Court determined that there was not such evidence of justifiable trust and confidence as to create a fiduciary relationship. Chief Justice Calvert in his dissent held that there was a controverted fact issue but also stated:

> As in most fields of the law, we will have cases in which we can say that the evidence establishes conclusively that there was or was not a confidential relationship, but there will be others in which the evidence will leave the ultimate inference to be drawn in that grey zone in which the trier of facts has always functioned in our system of jurisprudence. Our difficulties begin, of course, when we are called upon to determine whether the evidence in a particular case creates a grey zone.

*Id.* at 254.

■ Here the trial court held that there were no genuine issues of material fact for the jury on the fiduciary relationship claim. The relationship at issue was one of business and friendship. While a relationship of trust and confidence may arise informally from a purely personal association, *Thigpen v. Locke*, 363 S.W.2d at 253, or a business association not otherwise considered a fiduciary relationship as a matter of law, *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334, 337 (1944), the evidence in this case suggests neither. Although both men testified that Kung regarded Dodson as a son/protégé and although Kung was in a superior position because of his wealth and business experience, the testimony also reveals that Dodson was not a naive young man when he went to work for Ranger. He was 36 years old, had operated his own business at a profit and was familiar with contracts and litigation. His testimony showed he bargained with Kung about his salary and

"stipulated a few things" before he agreed to take the job with Ranger. In short, Dodson was a grown man with considerable business sense. There is no evidence that these men were not dealing at arms length and on equal terms. There is, therefore, no fact issue raised as to breach of contract and breach of fiduciary duty.

■ Dodson also argues that Appellees' Statute of Frauds defense is barred by fact issues creating a promissory estoppel. Even assuming that Kung promised to redeem the Ranger stock, the doctrine is inapplicable here. Promissory estoppel operates only in those cases where the promise is to sign a written agreement which complies with the Statute of Frauds. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982). Kung never promised to enter into a written agreement. Dodson, himself, testified that Kung refused to do so. Points of error three and four are overruled.

■ In points of error one and two, Dodson contends that genuine issues of material fact exist concerning his common law and statutory fraud causes of action. To prove common law and/or statutory fraud one must establish, among other elements, that the promisor expressly or by implication stated that he intended to perform. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977); Tex.Bus. & Com. Code Ann. § 27.01(a)(2) (Vernon 1968). If such intent did not exist when he made the statement, it was false and one upon which fraud may be based. This fraud concerns the state of the promisor's mind. It may be established by circumstantial evidence in conjunction with the breach of promise, but it cannot be established by the breach alone. *Turner v. Biscoe*, 141 Tex. 197, 199, 171 S.W.2d 118, 119 (1943). Dodson argues that evidence of a promise and its subsequent denial is in and of itself sufficient circumstantial evidence of fraudulent intent. In none of the cases cited by Appellant is the Statute of Frauds an issue. The Supreme Court refused to follow this same argument in *Nagle v. Nagle*, 633 S.W.2d at 800–01. As stated above, enforcement of Kung's al-

leged oral promise is barred. Therefore, as Dodson has failed to establish fraudulent intent, there is no genuine issue of material fact concerning common law and statutory fraud. Points of error one and two are overruled.

■ In his fifth point of error, Dodson alleges that he has raised fact issues concerning an accounting from Ranger which preclude a summary judgment. He alleges manipulation of Ranger by Westland, siphoning off of assets and a question as to Ranger's insolvency. Tex.R.Civ.P. 414(e) states that appellant's brief of his argument "should include such pertinent statements from the record as may be requisite, together with page references and such discussion of the authorities as is deemed necessary to make clear the points of error complained of." Dodson points us to no specific evidence in the record to sustain his allegations nor does he cite any authority. Therefore, nothing is presented for our review, and points not properly briefed are waived. *Arndt v. National Supply Co.*, 650 S.W.2d 547, 548 (Tex.Civ.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Point of error five is overruled.

■ In point of error six, Dodson contends that a material fact issue exists regarding his derivative action against Westland and Kung for waste, mismanagement and diminution of value of the Ranger stock. Tex.Bus.Corp.Act. Ann. art. 5.14B(2)(b) (Vernon 1980) requires that the initial pleading in a derivative suit state with particularity the efforts plaintiff has made to have suit brought for the corporation by its board of directors, or his reason for not making any such efforts. *Zauber v. Murray Savings Association*, 591 S.W.2d 932, 938 (Tex.Civ. App.—Dallas 1979), *writ ref'd n.r.e. per curiam*, 601 S.W.2d 940 (Tex.1980).

■ Dodson concedes that he has not complied with these requirements. He contends that a demand to bring suit need not be made where it is obvious that the parties in control would not approve the filing of a suit against themselves. *Zauber* states

that if the pleadings do not include specific facts and particularized reasons for failing to make demand, the case is subject to dismissal upon the proper exception and after opportunity to amend. *Id.* Appellees specially excepted "to the form of Dodson's shareholders' derivative action, which does not comply with the Texas Business Corporation Act." Dodson failed to amend his pleading in response. Therefore, no issue of fact is raised. Point of error six is overruled.

■ In his seventh point of error, Appellant claims that material fact issues exist as to his claim that Ranger, Westland and Kung are alter-egos of one another and, as such, are mutually liable for one another's acts. Since summary judgment was properly granted against Dodson on all of his claims, no issue of mutual liability remains. Also, Dodson admitted that he considered the alleged oral representations as Kung's personal obligation. Point of error seven is overruled.

■ In his eighth point of error, Dodson complains that Appellees did not meet their burden of proof and that the trial court erroneously shifted the burden of proof to him. In a summary judgment proceeding the movant has the burden of demonstrating lack of a genuine issue of material fact. *Roskey v. Texas Health Facilities Commission*, 639 S.W.2d 302, 303 (Tex.1982); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). A summary judgment for the defendant is proper only if, as a matter of law, the plaintiff could not succeed upon any theory pled. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). Such is the case here. Point of error eight is overruled.

The summary judgment is affirmed.